OPINION
Defendant-appellant, Patty Ann Stutzman, appeals the custody decision of the Madison County Court of Common Pleas, Juvenile Division. The decision of the trial court is affirmed.
Appellant and plaintiff-appellee, Heath Marshall Henry, are the parents of Shyann Stutzman, born April 11, 1996. Paternity was established in an administrative order issued December 6, 1996, and appellee was ordered to pay child support. Visitation issues were not addressed, and appellee did not have any contact with Shyann for a period of several years.
On October 15, 1999, appellee filed a petition requesting that the trial court make an allocation of parental rights and responsibilities and that he be named Shyann's residential parent. Appellee also filed a motion requesting temporary custody of Shyann. The motion alleged that appellant failed to "provide appropriate health care, nurturing and surroundings for the child to thrive." At the time, appellant was living in a hotel room with Shyann. The room lacked appropriate refrigeration for food, and had degenerated to a filthy state. On December 15, 1999, Madison County Department of Children's Services ("MCDCS") was granted temporary custody of Shyann. MCDCS placed Shyann in the custody of Oma and Jim Smith, appellant's grandparents. Shortly thereafter appellant moved in with the Smiths as well.
Subsequently, case plans were developed and implemented for both parties. Appellee was instructed to attend parenting classes and to obtain appropriate housing. Appellant was instructed to attend parenting classes, obtain housing and employment, undergo a psychological evaluation, and begin mental health counseling. A final hearing on the matter was held on November 8, 2000.
No one who testified at trial questioned either party's affection for Shyann or desire to be her parent. Those who testified were unanimous in concluding that both parties fully cooperated in completing the case plan requirements. Appellee obtained appropriate housing and both he and his present girlfriend completed parenting classes in compliance with his case plan. Appellee underwent a successful home study conducted by MCDCS. From all indications, Shyann and appellee have bonded and Shyann does well in appellee's care.
Appellant completed a clinical assessment and psychological evaluation, and was diagnosed with depression and low self-esteem. She was prescribed appropriate medications for her conditions. She completed an anger management course and was attending ongoing counseling sessions at the time of the hearing. During the course of the proceeding she rented an apartment and was living on her own.
Michelle Lytle, a MCDCS caseworker, was involved with the parties. She testified that both parents complied with case plan requirements. While she recognized that both parties made strides in their parenting skills, Lytle maintained some reservations about appellant's decision-making abilities and her ability to cope with daily life without substantial assistance. She testified that appellant needs continuing help managing her mental health issues, managing her finances, and keeping track of appointments. She also noted that as the agency's involvement has decreased, appellant's housekeeping has deteriorated, and that appellant's home and daughter have become less of a priority. She testified that appellant's attitude toward these things has been negatively affected by her friends. Based on her reservations regarding appellant's ability to function independently, Lytle concluded that appellee should be designated Shyann's residential parent, but that a shared parenting plan in which the parties equally shared parenting time would be ideal.
Sue McClelland, director of Community Education and Prevention at Madison County Hospital, testified that both parties satisfactorily completed parenting classes. She indicated that appellant had made slow, but steady, progress in her parenting skills. McClelland stated that either party would be suitable as a custodial parent. While McClelland testified that she had no reservations about appellee's parenting skills, she testified that appellant would require continuing support services if she were to successfully care for Shyann. She felt that Madison County Mental Health Services could likely provide such services.
Kelli Portman, a family mentor with the Adriel School, assisted appellant as part of her case plan services. She testified that appellant's parenting skills have improved tremendously. However, she stated that appellant still requires assistance with decision making, managing her home, and budgeting and paying bills on time. Even after Portman helped appellant devise a means of organizing her bills, appellant still lost track of them. Upon making a surprise visit to appellant's home nine days before trial, Portman found appellant's apartment in terrible condition: trash cans were overflowing in the kitchen and bathrooms, and dirty dishes and clothing were strewn all about. Although Shyann was at school, she was staying with appellant at that time of the visit. Portman expressed great concern that appellant would not be able to adequately care for Shyann without a good deal of outside support.
After hearing the evidence, the trial court designated appellee Shyann's residential parent and legal custodian. However, the trial court found that Shyann should spend an equal amount of time with both parents and granted appellant liberal parenting time. Appellant appeals raising a single assignment of error:
 THE TRIAL COURT ERRED IN AWARDING THE ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES TO APPELLEE DESPITE THE OVERWHELMING TESTIMONY THAT APPELLANT SHOULD BE THE RESIDENTIAL PARENT IF SUPPORTIVE SERVICES WERE IN PLACE AND THAT THOSE SERVICES WERE INDEED AVAILABLE.
Appellant contends that the trial court's decision is against the manifest weight of the evidence. In particular, appellant contends that the trial court erred by finding that appellant's "support system cannot continue at the current level and could not prevent significant relapses which might endanger the child's physical and emotional health." Appellant argues that, absent this finding, the trial court would have been obligated to name her the residential parent. We disagree.
R.C. 2151.23(F)(1) requires that a juvenile court, when making an initial allocation of parental rights and responsibilities, follow the best interest standard set forth in R.C. 3109.04(F). The trial court must consider all relevant factors related to the child's best interest, including those factors specifically enumerated in R.C. 3109.04(F)(1).
It is well-established that a trial court has broad discretion in custody proceedings. See, e.g., Davis v. Flickinger (1997),77 Ohio St.3d 415, 418. Because custody decisions "are some of the most difficult and agonizing decisions a trial judge must make[,] * * * a trial judge must have wide latitude in considering all the evidence before him or her * * * and such a decision must not be reversed absent an abuse of discretion." Id. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Upon review of the record, we do not find that the trial court abused its discretion. The trial court heard the testimony of appellant, appellee, numerous social service providers and family members, and, in a written decision, applied the evidence to the best interest factors. The trial court made findings related to the statutory factors and concluded that it was in Shyann's best interest that appellee be her residential parent. The trial court made this decision based primarily on the concern, established by the testimony of several social service providers, that appellant can not adequately care for Shyann "without a significant support system in place." Left with the task of choosing one party over the other, the trial court determined that this evidence weighed against designating appellant the residential parent. We do not find the trial court's decision to be unreasonable, arbitrary or unconscionable. The assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.